IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| PAUL UNDERWOOD,<br><br>                         Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>                         Defendant. | CV 14-63-BLG-CSO<br><br><br>**ORDER** |

Plaintiff Paul Underwood ("Underwood") filed this action seeking judicial review of Defendant Commissioner of Social Security's ("Commissioner") decision denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–433, 1381–1383(c). *ECF 2.* The issues have been fully briefed. *See ECF 18, 19,* 25. Having reviewed the Administrative Record ("AR") and the parties' arguments, the Court enters the following order.

# I.    PROCEDURAL BACKGROUND

Underwood protectively filed his benefits applications on March 26, 2010, alleging that he has been unable to work since January 15, 2010. *AR 24, 246–257.* He alleges "[h]is ability to perform work related activities is limited by shortness of breath and physical limitations resulting from dilated cardiomyopathy, chronic congestive heart failure and chronic obstructive pulmonary disorder [COPD]; and is limited by mental impairments resulting from depressive disorder, anxiety disorder, posttraumatic stress disorder [PTSD]." *ECF 18.*

The Social Security Administration ("SSA") denied Underwood's applications initially and upon reconsideration. *AR 182–184; 188–191.* On June 2, 2011, an Administrative Law Judge ("ALJ") held a hearing. *AR 101–153.* On June 28, 2011, the ALJ issued a written decision denying Underwood's claims. *AR 162–173.*

Underwood sought review of the ALJ's decision by the Appeals Council. *AR 203.* On December 30, 2011, the Appeals Council granted the request for review, vacated the ALJ's decision, and remanded the matter to the ALJ to resolve an issue regarding the exertional level of

the jobs cited by the ALJ. *AR 178–180*. The Appeals Council found this issue necessitated further consideration into "whether the claimant is able to perform other work consistent with his residual functional capacity." *AR 179*.

On August 1, 2012, the ALJ held a second hearing on Underwood's claims. *AR 46–100*. On August 13, 2012, the ALJ issued a second written decision denying Underwood's claims. *AR 24–41*.

On March 28, 2014, the Appeals Council denied Underwood's request for review, and the ALJ's decision became final for purposes of judicial review. *AR 1–5*; 20 C.F.R. § 404.981 (2013). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Garcia v. Commr. of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014) (citation omitted); 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Ryan v. Commr. of Soc. Sec.*,

528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks omitted)).  "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (internal quotation marks and citation omitted).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and cannot affirm the ALJ "by isolating a specific quantum of supporting evidence."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted).  The ALJ is responsible for determining credibility, resolving conflicts in the testimony, and resolving ambiguities in the record.  *Treichler v. Commr. of Soc. Security*, ___ F.3d ___, 2014 WL 7332774, at *6 (9th Cir. 2014) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

## III.  BURDEN OF PROOF

A claimant is disabled for purposes of the Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)–(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)–(v).

1.  The claimant must first show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2.  If not so engaged, the claimant must next show that he or she has a severe impairment. *Id*.

3.  The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of

Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments"). *Id.* If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4. If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here. *Id.* "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step." *Id.* at 1098-99.

5. If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If an adjustment to other work is possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that the claimant can perform. *Id.* The Commissioner can meet this burden via the testimony of a vocational expert or reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Id.* If the Commissioner is unable to meet this burden then the claimant is disabled and entitled to benefits. *Id.*

# IV. THE ALJ'S OPINION

In the written decision at issue here, the ALJ followed the five-step sequential evaluation process in considering Underwood's claim. First, the ALJ found that Underwood had not engaged in substantial gainful activity since his alleged onset date. *AR 27–28*. The ALJ noted that Underwood worked after the alleged onset date but concluded that the income from those activities did not rise to the level of substantial gainful activity. *AR 28*.

Under step two, the ALJ found that Underwood has the following severe impairments: "dilated cardiomyopathy, chronic congestive heart failure, and chronic obstructive pulmonary disorder[.]" The ALJ also noted that Underwood has alleged a series of additional impairments. First, he has been diagnosed with diabetes mellitus, dyslipidemia and obstructive sleep apnea, but the ALJ determined that the impairments have no more than a minimal effect on Underwood's ability to work and are thus not considered severe. *AR 28*. Second, Underwood was diagnosed with dermatitis dyshidrotic, but the ALJ found that there was no evidence it produced limiting symptoms or meet the durational requirement. *AR 28–29*. Third, the ALJ found that Underwood's

mental impairments of "major depressive disorder, moderate, recurrent, anxiety and posttraumatic stress disorder," were not severe because they do not cause more than a minimal limitation in his ability to perform basic mental work activities. *AR 29.* Fourth, the ALJ found that although Underwood claimed he had vision problems due to his diabetes mellitus, there is no medical evidence in the record and there has been no medical treatment for his eyes. *AR 30.* The ALJ found the subjective complaints alone did not provide a basis for an impairment. *AR 30.*

The ALJ, under step three, found that Underwood does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in the Listing of Impairments. *AR 30–31.*

The ALJ found that Underwood has the residual functional capacity ("RFC") to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant must have the ability to alternate position between walking, standing and sitting throughout an 8 hour day. The claimant is limited to walking no more than 60 feet at a time, standing for 30 minutes to 1 hour at a time, being on his feet no more than 2-4 hours total in an 8 hour day, and sitting for 30 minutes

to 1 hour at a time for up to 6-8 hours total in an 8 hour day. The claimant can lift up to 10 pounds on an occasional basis and less than 10 pounds frequently. The claimant can never climb ladders, ropes or scaffolds, crawl only on a seldom basis and perform all other postural activities no more than occasionally. Finally, the claimant must avoid concentrated exposure to extreme temperatures, both hot and cold, excessive vibration, and humidity.

*AR 31.*

Next, the ALJ found that Underwood is unable to perform any past relevant work. *AR 39.*

Finally, the ALJ found that Underwood could perform jobs that exist in significant numbers in the national economy. *AR 39.* He considered Underwood's age at the alleged onset (46 years old, defined as a younger person in the regulations), education (at least a high school education with the ability to communicate in English), work experience, and RFC. *AR 39.* Relying on testimony from a vocational expert ("VE") who also considered the aforementioned factors, the ALJ concluded that Underwood could perform work in the following representative occupations: addresser, cutter and paster, document preparer. *AR 40.* Thus, the ALJ determined Underwood was not disabled. *AR 40–41.*

## V.  PARTIES' ARGUMENTS

Underwood argues that the ALJ erred by: (1) failing to give proper weight to the treating physicians' and medical providers' opinions that Plaintiff was unable to work, *ECF 18* at 4–12; (2) failing to cite clear and convincing reasons for discrediting Plaintiff's testimony about subjective complaints of shortness of breath, fatigue and other symptoms, *id.* at 13–16; (3) failing to support by the record the findings based on Plaintiff's limited daily activities and part time work, *id.* at 17–19; (4) giving limited weight to the opinions of plaintiff's friend and mother, *id.* at 20; (5) finding Plaintiff's RFC was less than sedentary work activity and then finding Plaintiff could work, because less than a full range of sedentary work is by definition disabled, *id.* at 21–22; (6) finding that Plaintiff had the RFC for sedentary work was not supported by the record, *id.* at 22–23; (7) finding Plaintiff's depressive disorder, anxiety disorder and PTSD were not severe impairments, and failed to account for their functional limitations in the RFC even though the severity step is a *de minimus* standard, *id.* at 23–25; and (8) not including all of Plaintiff's disabilities and limitations

in the hypothetical questions posed to the vocational expert. *Id.* at 25–26.

In response, the Commissioner argues that the ALJ: (1) properly determined that Plaintiff's mental impairments were nonsevere, *ECF 19* at 5–7; (2) properly evaluated the medical evidence, *id.* at 7–18; (3) properly evaluated Plaintiff's credibility, *id.* at 18–20; (4) had substantial evidence to support his evaluation of lay witness testimony, *id.* at 21–23; (5) included all of the limitations the ALJ found credible and supported by substantial evidence in the record in the hypothetical question posed to the vocational expert, *id.* at 23–27; and (6) should conduct further administrative proceedings if the decision is overturned rather than remanding for payment of benefits. *Id.* at 27–28.

## VI. <u>DISCUSSION</u>

The primary issues before the court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error. The Court is not permitted to re-weigh the evidence. For the reasons set forth below, and applying controlling Ninth Circuit authority, the Court finds that: (1) the Commissioner's decision is not based on substantial evidence in the record; (2) the additional evidence

from Dr. Logan is entitled to controlling weight; (3) the ALJ erred in discrediting Underwood's testimony regarding the need to lie down throughout the day; and (4) substantial evidence supports a conclusion that Underwood is disabled. Thus, the Court orders that the Commissioner's decision be reversed and that the matter be remanded for an award of benefits.

### A. ALJ'S ASSESSMENT OF UNDERWOOD'S CREDIBILITY

The Court concludes that the ALJ erred in determining that Underwood was not fully credible because of his allegedly inconsistent statements. To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603–604 (9th Cir. 1989). However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

An ALJ may take the lack of objective medical evidence into consideration when assessing credibility. *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1196 (9th Cir. 2004). Inconsistencies in testimony may be considered in a credibility assessment. *Orn,* 495 F.3d at 636 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603).

The ALJ must also consider the factors set forth in SSR 88-13 including:

A. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

B. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

C. Type, dosage, effectiveness, and adverse side-effects of any pain medication;

D. Treatment, other than medication, for relief of pain;

E. Functional restrictions; and

F. The claimant's daily activities.

SSR 88-13, *superseded in part on other grounds*, 95-5P; *see also* 20 C.F.R. § 404.1529(c)(3).

If, after engaging in this analysis, the ALJ rejects a claimant's subjective testimony of the severity of symptoms, the ALJ must cite specific, clear, and convincing reasons for doing so. *Smolen*, 80 F.3d at 1283-84 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

Here, the Court concludes that the ALJ did not give specific, clear, and convincing reasons for finding that Underwood's testimony was not credible. The ALJ pointed to three alleged inconsistencies to find Underwood was not credible: (1) he claimed his symptoms were the same as before and later claimed they had worsened; (2) he testified he was limited to walking 60 feet at a time but later testified he walked further than that when taking out the garbage; and (3) his failure to seek treatment or follow a prescribed course of treatment can cast doubt on the claimant's sincerity. *AR 35*.

In looking to the first alleged inconsistency, the record does not show that Underwood contradicted himself based on his claim of worsened symptoms. Underwood's testimony was consistent regarding changes in his condition. When the ALJ asked Underwood's attorney whether anything had gotten worse since the last hearing, the attorney responded that "I think Mr. Underwood will testify pretty much as he

did the last time, that, you know, his living circumstances have changed and now he's being taken care of by his mother and his girlfriend, where before he was living with children who were helping. That's all changed." *AR 60-61*. When the ALJ asked Underwood whether he has gotten better or worse since the last hearing, Underwood responded that "I think it's gotten worse due to I get tuckered out all the time." *AR 75.* When the ALJ later asked him whether his heart caused him more or less problems, Underwood responded that it was about where he was before "except for I get more tired." *AR 78.* These statements are consistent, and the Court can find no substantively contradictory statements in the record, nor were any specifically cited by the ALJ.

Next, the ALJ claimed that Underwood's testimony regarding how far he could walk was inconsistent, but such a finding was not supported by the record. Underwood testified that he could walk "Sixty, 50, 60 feet or less." *AR 77.* When asked if he had tried to push beyond that, he responded that he would be "out of breath and I have to just stop." *AR 78.* When later asked by the ALJ if the 50 or 60 feet that he can walk is to take out the trash, he responded that it was. *AR 89.* He

clarified that he could walk all the way to the garbage bin, but had to rest before he could walk back so he could catch his breath. *AR 90-91*. The testimony that he could walk back from taking out the trash after resting is not inconsistent with his first statement that he could walk 50 or 60 feet before he would be out of breath and have to stop. There are no other inconsistencies cited by the ALJ. Underwood was consistent in claiming he could walk 50 or 60 feet before needing to stop to catch his breath.

Finally, the ALJ alleged Underwood's failure to seek treatment cast doubt on his sincerity. *AR* 35. Underwood did not seek treatment for a period of eight months. *AR* 35. The record indicates, however, that the lack of treatment was due to an inability to pay. *AR 60*. An inability to afford treatment is not a valid basis for discrediting a claimant's testimony. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). The ALJ stated that there was no evidence that Underwood sought low-cost or charity care before seeking treatment from Riverstone Health. *AR 35*. But Underwood did seek low-cost care at Riverstone Health and indicated that he could not afford to pay for medication during the gap in treatment because he had lost his

Medicaid benefits. *AR 33.* The ALJ's reliance on Underwood's inability to pay for treatment was improper in determining his credibility.

The ALJ erred in discrediting Underwood's credibility. The ALJ improperly ignored Underwood's need to lie down throughout the day when defining the RFC. At the hearing, Underwood testified that he would need to lie down for about 45 minutes after sitting for an hour. *AR 92.* His need to lie down throughout the day was not included in the ALJ's RFC. *AR 31.* The hypothetical question posed to the VE clarified that if he needed to take more than the normal two 15 minute breaks and a 30 to 60 minute break in a shift, he would be unable to perform jobs at the listed level. *AR 97.*

## B. ALJ'S ASSESSMENT OF MEDICAL EVIDENCE

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he or she has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). An examining physician's opinion, in turn, "carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The weight given a treating or examining physician's opinion depends on whether

it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2). When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not "substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Among the situations in which the ALJ must cite such specific and legitimate reasons is when a treating physician's opinion is contradicted by a non-treating physician, and the non-treating physician's opinion is not based on independent clinical findings or is based on the same information used by the treating physician. *Andrews*, 53 F.3d at 1041. The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting

clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

If the "Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Commr. of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (*quoting Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.2007) (internal quotations omitted) (alterations in original) and 20 C.F.R. § 404.1527(c)(2)).

In considering the record as a whole, including Underwood's additional evidence, the Court concludes that the ALJ erred in his rejection of the opinions of Underwood's treating physicians. Although he claims that he gave the opinion of Dr. Camp "significant weight" *(AR 37)*, the ALJ did not discuss Dr. Camp's opinion that Underwood's

dilated cardiomyopathy, congestive heart failure, and diabetes mellitus type 2 resulted in "a permanent medical condition and the patient is permanently disabled for all physical work." *AR 393*. He mentions that he afforded "[so]me weight" to the opinion of Dr. Mukkamala, but does not discuss this doctor's findings that Underwood's treadmill stress test was terminated secondary to fatigue, and that "[b]ased on his treadmill stress test, he is a New York Association class II with persistent and severe LV dysfunction that will most likely require a defibrillator for prevention of sudden cardiac death." *AR 408*.

The ALJ afforded "[l]ittle weight" to Dr. Sample's opinion that Underwood qualifies for permanent disability on the basis of cardiomyopathy and congestive heart failure, stating that it is "possible that the doctor was referring solely to an inability to perform the claimant's past work...." and that Dr. Sample "offered no function by function analysis...." *AR 37*. But the ALJ neglected to review the doctor's physical examination notes or laboratory data, and did not mention Dr. Sample's impressions that Underwood suffers from "Severe dilated cardiomyopathy ... with left ventricular ejection fraction

20%" and "Chronic congestive heart failure, chronic systolic and diastolic heart failure, functional class II" and ten other ailments.

The ALJ similarly rejects Dr. Otto's opinions that Underwood cannot work, again without a careful review of the reasons for those opinions. *See AR 553 (erroneously cited by the ALJ as Ex. 10F/12 (*AR 38)). Dr. Otto explained that, although Underwood has other comorbidities, "his most compelling problem is the aerobic impairment from his heart failure. He functions at a New York functional class 3 level, meaning dyspnea and symptoms with minimal exertion." *AR 553.*

The ALJ also affords little wright to the opinions of Dr. Logan. *AR 38.* Defendant argues that the new medical evaluation provided to the Appeals Council should not be considered because it is a check-box report and contained little explanation. *ECF 19* at 11. The report from Dr. Logan, however, does provide explanations for the limitations indicated on the form. *AR 590.* Dr. Logan explains that Underwood "has shortness of breath and fatigue with physical activity. Patient has congestive heart failure and cannot tolerate even minimal exertion. He has severe cardiomyopathy[.]" *AR 590.* She states that he can sit for up

to three hours in a day, stand for 30 minutes, and walk for less than 5 minutes but that the remaining time must be spent laying down. *AR 591*. Despite Underwood's testimony supporting the limitation requiring him to lie down throughout the day, *AR 72*, the ALJ does not take this need into consideration in the RFC. *AR 31*.

Dr. Logan's assessment of Underwood's capabilities is specific and it indicates his capacity throughout an entire workday. *AR 590–595*. As she is now his treating physician, her opinion on his capacity is entitled to controlling weight because it is supported by medically acceptable diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Ghanim*, 763 F.3d at 1160. Her limitations are consistent with the previous records of the other doctors, who did not provide a detailed functional analysis. Based on her assessment of Underwood's capacity, he would not be able to perform at the RFC indicated by the ALJ, nor would he be able to perform in the jobs listed by the ALJ. Based on the evidence described above, the Court concludes that Dr. Logan's opinion is entitled to controlling weight because it is supported by sufficient medical data and is consistent with other evidence in the record.

In light of the Court's conclusion, it is unnecessary to address the other issues Underwood raises.

## B.   <u>**WHETHER TO REMAND OR REVERSE**</u>

The decision whether to remand for further proceedings or for an immediate award of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Remand for an award of benefits is appropriate if there is no useful purpose to be served by further proceedings or if the record is fully developed. *Strauss v. Commissioner*, 635 F.3d 1135, 1138–39 (9th Cir. 2011). The Court should remand for an award of benefits if: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Harman*, 211 F.3d at 1178.

Here, in light of the foregoing discussion, the Court concludes that no useful purpose would be served by further proceedings. The record is fully developed. The ALJ erred in discrediting the testimony of Underwood. The new evidence presented to the Appeals Council should

be given controlling weight. No outstanding issue remains to be resolved. The ALJ would be required to find Underwood disabled if the medical evidence were properly weighed, and the additional evidence from Dr. Logan were considered.

## VII. <u>CONCLUSION</u>

Based on the foregoing,

**IT IS ORDERED** that Underwood's motion for summary judgment (*ECF 18*) is GRANTED, that the Commissioner's decision denying DIB and SSI is REVERSED, and that this matter is remanded for payment of benefits. The clerk is directed to enter Judgment accordingly.

DATED this 30th day of January, 2015.

<u>**/s/ Carolyn S. Ostby**</u>
United States Magistrate Judge